IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ERNEST MONTGOMERY                                         PLAINTIFF

V.                         CIVIL ACTION NO. 5:11-cv-00004-DCB-JMR

WARREN COUNTY, DEPUTIES BILLY HIGGINS,
MICHAEL HOLLINGSWORTH AND CHRIS SATCHER,
IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES              DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause comes before the Court on the Defendants' Motion for Qualified Immunity, alternatively styled as a Motion to Dismiss or a Motion for Summary Judgment [**docket entry no. 8**], and the Plaintiff's Motion to Amend the Complaint [**docket entry no. 14**]. Having considered said Motions, the Parties' opposition thereto, applicable statutory and case law, and being otherwise fully advised of the premises, the Court finds and orders as follows:

## I. Facts and Procedural History

Montgomery filed his Complaint against the Defendants in Warren County Circuit Court and the case was removed to this Court on January 12, 2011. In his Amended Complaint [docket entry no. 14-2],[1] Montgomery alleges the following facts: he was involved in a

---

[1] The Court will grant Montgomery leave to amend the Complaint and rely on the Amended Complaint throughout this Opinion. See FED. R. CIV. P. 15(a). The Defendants' objections to Montgomery's request are noted; however, the Court finds, contrary to the Defendants' assertions, that the Amended Complaint does state a valid excessive force claim, <u>see</u> <u>infra</u>, and that the Defendants have had the opportunity to rebut this claim. <u>See</u> Defendants' Response to Motion to Amend, docket entry no. 16 ¶ 9. There are no factors present that counsel against application of the default rule that a complaint is freely amendable. <u>See</u> FED. R. CIV. P. 15(a); <u>Foman v.</u>

car accident; he fled the scene; he eventually arrived at his girlfriend's apartment; while there, he was attacked by the Defendants.[2] Before the start of discovery, the Defendants filed their present Motion styled as a motion to dismiss or summary judgment motion based on qualified immunity.[3] Instead of providing an alternative narrative of the events which give rise to the Amended Complaint, the Defendants support their Motion with Montgomery's Warren County Justice Court convictions, which indicate that he was found guilty in of resisting arrest and fleeing the scene of the accident on the same day he was allegedly attacked by the Deputies. The Defendants' primary argument is that Heck v. Humphrey bars any claims against them because all Montgomery's claims imply the invalidity of these convictions.

---

Davis, 371 U.S. 178, 182 (1962).

[2] The Amended Complaint states:

9.   On or about November 26, 2009, Plaintiff was involved in a vehicular accident.
10.  After leaving the scene of the accident, Plaintiff was accosted, and attacked by the Defendant Deputies, while at his girlfriend's apartment.
11.  Defendant Deputies attacked Plaintiff, beating and tasering him.
12.  As a result, Plaintiff was caused to suffer physical, mental, and emotional injuries, including, but not limited to, a broken nose, lacerations, and multiple abrasions to his face, back, and head.

[3] The Motion was docketed as a motion to dismiss, but titled more generically as a motion for qualified immunity.

## II. Analysis

## A. Whether the Defendants' Motion Should Be Considered a Motion to Dismiss or a Motion for Summary Judgment

*1. Motion to Dismiss and Motion for Summary Judgment Standards*

As <u>Wright and Miller</u> notes, "The issue of qualified immunity is often resolved on motion for summary judgment." <u>13D Wright, Miller, Cooper, & Freer, 13D Federal Practice and Procedure</u> § 3573.3, pg. 622 (3d. ed). It is not uncommon, however, for a district court to consider the issue of qualified immunity in a motion to dismiss. <u>See, e.g.</u>, <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). The well-known standards a district court applies in its evaluation of these motions are different and distinct, with the motion-to-dismiss standard relying entirely on the face of the complaint and the summary-judgment standard weighing the evidence. <u>See</u> <u>Castillo v. City of Weslaco</u>, 369 F.3d 504, 506-07 (5th Cir. 2004) (citing <u>Beherns v. Pelletier</u>, 516 U.S. 299, 309 (1996)). The Supreme Court has articulated how these standards apply once a defendant asserts entitlement to qualified immunity:

> Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts.

Behrens, 516 U.S. at 307-08 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

   *2. Motion-to-Dismiss Standard Applicable*

   The Defendants are attacking Montgomery's Amended Complaint with evidence not referred to in the challenged pleading, and typically the Court would consider this "beyond-the-pleadings" approach as an invitation to treat their present Motion as a motion for summary judgment. See Murphy v. Inexco Oil Co., 611 F.2d 570, 573 (5th Cir. 1980); see also generally, 5C Wright & Miller, Federal Practice and Procedure § 1366 (3d. ed.). However, the Defendants' qualified immunity claim relies exclusively on Heck v. Humphrey, 512 U.S. 477 (1994). When a defendant raises qualified immunity under Heck, it is permissible for a district court to consider evidence of the plaintiff's conviction in a motion to dismiss, even when that evidence technically qualifies as extraneous. See, e.g., Johnson v. McElveen, 101 F.3d 423 (5th Cir. 1996) (considering the plaintiff's state court conviction in a motion to dismiss); Hudson v. Hughes, 98 F.3d 868 (5th Cir. 1996) (same), Connors v. Graves, 538 F.3d 373 (5th Cir. 2008). Therefore, the Court will consider Montgomery's state court convictions only as they pertain to the Defendants' Heck argument and will interpret the present Motion as a motion to dismiss.

   *3. Summary Judgement Motion Premature*

   As a corollary to this decision, the Court declines to

consider the Defendants' Motion under the more demanding summary-judgment standard and will limit its inquiry to the face of the Amended Complaint. In their latest pleading, the Defendants state that the Court must dismiss Montgomery's claims because he has not produced "genuine and triable" evidence to rebut their invocation of immunity; see docket entry no. 19, however, to require Montgomery to produce "genuine and triable evidence" supporting his claims before the commencement of discovery is inconsistent with the Supreme Court's instruction in Behrens. 516 U.S. at 307-08. The Defendants will have the opportunity to refile a motion for summary judgment based on qualified immunity after the discovery period has run.

**B. Whether the Defendants Are Entitled to Qualified Immunity from Plaintiff's § 1983 Claims**

*1. Qualified Immunity*

"The qualified-immunity defense 'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Until relatively recently, pursuant to the instruction of Saucier v. Katz, 533 U.S. 194 (2001), a district court was mandated to follow a "rigid order of battle" in its determination of whether a defendant was entitled to qualified immunity. Pearson, 555 U.S. at 235 (quoting Brosseau v. Haugen, 543

5

U.S. 194, 201-202 (2004) (Breyer, J., concurring)). The prescribed sequence required a district court to first consider whether a constitutional right was violated and only then, after finding in the affirmative, to inquire whether that right was clearly established. Pearson, 555 U.S. at 232 (citing Saucier, 533 U.S. 194). However, courts no longer are instructed to follow any particular order, Pearson, 555 U.S. at 236, and need only determine whether there has been a violation of a clearly established right, or in this case, whether the plaintiff has alleged a violation of a clearly established right in his Amended Complaint. Behrens, 516 U.S. at 307-08.

   *2. Excessive Force*

   In his Amended Complaint, Montgomery claims the Defendants violated his due process, equal protection, and Fourth Amendment rights.[4] Montgomery appears to argue that the Defendants lacked probable cause to stop his vehicle initially,[5] and following this

---

   [4] Montgomery groups his due process and equal protection claims together into what the Court understands is a general Fourteenth Amendment violation, i.e., that he was deprived of "life, liberty, or property, without due process of law . . . [and denied] the equal protection of the laws." See U.S. CONST. amend. XIV § 1. Because both Parties fail to brief Montgomery's equal protection claim and because the facts do not allege any unequal or discriminatory treatment on the part of the Defendants, the Court will consider Montgomery's Fourteenth Amendment violation as stemming solely from the Due Process Clause and will disregard his equal protection claim.

   [5] Montgomery pled guilty to improper passing or turning, but the charges of driving with a suspended licence, disorderly conduct and failure to comply, improper/expired tag, and seat belt

stop, the Defendants violated his rights when they used excessive force by attacking him in his girlfriend's apartment.

With respect to his Fourteenth Amendment due process claim, Montgomery advances the theory that the Defendants violated his substantive due process right to bodily integrity when they attacked him in a manner that shocked the conscience. See Doe v. Taylor Ind. School Dist., 15 F.3d 443, 450-51 (5th Cir. 1994); Conroe Creosoting Co. v. Montgomery County, 249 F.3d 337 (5th Cir. 2001). Because Montgomery apparently concedes that the Defendants' actions were related to his arrest[6]--whether unlawful or not--his claims are properly characterized as Fourth Amendment claims, not Fourteenth Amendment claims. Graham v. Connor, 490 U.S. 386, 395 (1989). In Graham v. Conner, the Supreme Court unequivocally stated that "*all* claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Id.; Estate of Bennett v. Wainwright, 548 F.3d 155, 163 (1st Cir. 2008). Thus, the Court considers Montgomery's § 1983 claim a Fourth Amendment excessive force claim. See also, Shelton v. City of Laurel, No. 2:06-cv-

---

violation were either dismissed or he was found not guilty. See Records of Warren County Justice Court, docket entry no. 10-1.

[6] See Plaintiff's Memo., pg. 4, docket entry no. 11.

111-DCB, 2007 WL 1141501 (S.D. Miss. April 17, 2007).

For Montgomery to state a valid 42 U.S.C. § 1983 claim for a violation of his Fourth Amendment right to be free of excessive force, he must allege: (1) "an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." Stepney v. City of Columbia, 695 F. Supp. 2d 412, 417 (S.D. Miss. 2010)(quoting Bush v. Strain, 513 F.3d 492, 500-01 (5th Cir. 2008)). This Court considers three factors in particular when evaluating the "objective reasonableness" of a defendant's actions: "(1) the severity of the crime, (2) whether the plaintiff posed an immediate threat to the safety of the officer or others, and (3) whether the plaintiff was actively resisting arrest or was attempting to evade arrest." Shelton, 2007 WL 1141501, at *4 (citing Gutierrez v. City of San Antonio, 139 F.3d 441, 447 (5th Cir. 1998)).

In his Amended Complaint, Montgomery clearly alleges that the Defendants acted with reckless disregard for his safety by attacking him in his girlfriend's apartment causing significant injuries, meeting the first two elements of an excessive force claim. See Amended Complaint, docket entry no. 10-2 ¶¶ 10-12. Further, under the three factors for assessing the objective reasonableness of the Deputies' actions, the underlying crime for which Montgomery was convicted--improper passing or turning--is not

a particularly severe one, and there is no way to tell from the facts in the Amended Complaint whether he posed any threat to the safety of the Deputies. As to whether Montgomery was *actively* resisting arrest, the Defendants have not alleged any facts connecting Montgomery's resisting arrest and fleeing the scene conviction to the injuries he sustained. Moreover, even if Montgomery was actively resisting arrest, it would not necessarily foreclose an excessive force claim if other factors were present. See Gutierrez, 139 F.3d at 447 (stating that the court should "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.") (internal quotations omitted)). Accordingly, Montgomery has alleged a constitutional violation for excessive force and that violation was clearly established at the time of the incident, see Graham, 490 U.S. at 395 (defining the contours of an excessive force claim more than two decades before the alleged incident), and therefore his Complaint is sufficient to survive dismissal.

## C. Whether *Heck v. Humphrey* bars Montgomery's Claims

### 1. *Heck v. Humphrey*

The Defendants contend that the Supreme Court's holding in Heck v. Humphrey bars Montgomery's § 1983 claims against them. See 512 U.S. 477 (1994). They correctly assert that Heck precludes any § 1983 claim that would "necessarily require the plaintiff to prove

the unlawfulness of his conviction." Id. at 486. In order for the Court to determine whether Heck is indeed applicable, it must first establish the elements which compose Montgomery's justice court convictions. See, e.g., Ballard v. Burton, 444 F.3d 391, 399 (5th Cir. 2006)(outlining the elements of the plaintiff's criminal convictions before engaging in a Heck analysis); Arnold v. Town of Slaughter, 100 Fed. Appx. 321, 323 (5th Cir. 2004) (unpublished op.) (same); Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996)(same). As the Defendants provide little legal argument in this regard and even fewer facts, this Court treads carefully in considering the effect of his convictions, and as is required in all motions to dismiss, resolves any ambiguity and uncertainty in favor of the nonmovant. See, e.g., Jones v. Alcoa, Inc., 339 F.3d 359, 362 (5th Cir. 2003).

The Warren County Justice Court records indicate that Montgomery was found guilty of resisting arrest and leaving the scene of an accident. With respect to the resisting arrest conviction, the Court can presume he violated Mississippi Code Annotated § 97-9-73. That statute provides:

> It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person by any state, local or federal law enforcement officer, and any person or persons so doing shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail not more than six (6) months, or both.

As to his leaving the scene conviction, the Court surmises that he was convicted of either Mississippi Code Annotated § 63-3-401, § 63-3-403, § 63-3-407, or § 63-3-409, all of which impose varying duties on a driver of a vehicle who has been involved in an accident depending on the degree of damage or injury caused by the accident.[7] It is not necessary to know the exact hit-and-run statute Montgomery violated as each violation is predicated on whether or not he left the scene of the accident. Further, while the Defendants do not specify exactly which justice court violation would be undermined by Montgomery's claims, the Court believes that it is the resisting arrest conviction on which they primarily rely.

*2. Whether an Excessive Force Claim Implies the Invalidity of a Resisting Arrest Conviction*

As mentioned above, Montgomery does not appear to dispute that the incident was related to his car accident or even that he fled the scene following the accident. What he does contend is that he was not engaged in criminal activity at the time he allegedly sustained his injuries. The Court finds this assertion plausible. There are no facts to suggest that Montgomery resisted arrest at the time that the Defendants allegedly used excessive force against him. For instance, Montgomery could have resisted arrest when he

---

[7] Section 63-3-401 can likely be ruled out since violation of that statute is considered a felony and the potential fines and jail time exceed the jurisdiction of the justice court. See <u>Corbin v. State</u>, -- So. 3d ---, --- So.3d ----, 2011 WL 4389740, at *4-*5 (Miss. September 22, 2011).

fled the scene of the accident but later could have attempted to comply with the officers when he suffered his injuries. Moreover, even if the injuries which Montgomery sustained were more closely related in time to his attempt to unlawfully resist arrest, that does not mean that the Deputies at some point during or after his unlawful resistance could not have used excessive force. This conclusion would suggest that *any* state action that stems from a misdemeanor conviction for resisting arrest would be barred under Heck,[8] and such a reading would be imprudent as state officers would be shielded from potential liability even if their actions were incongruent with the actions of the arrestee. See, e.g., Arnold, 100 Fed. Appx. at 323 (unpublished op.) ("How Heck applies to excessive force claims is not always clear. By proving an excessive force claim, a plaintiff will not invariably invalidate his conviction."). In sum, courts have not countenanced the broad

---

[8] The Court recognizes that some criminal convictions per se bar some § 1983 claims, regardless of the facts. Heck itself concerned a § 1983 suit for malicious prosecution. See Heck v. Humphrey, 512 U.S. 477 (1994). Heck claimed that his prosecutor obtained his criminal conviction by, among other things, intentionally destroying exculpatory evidence. Id. at 479. The Supreme Court regarded Heck's suit as a collateral attack against his state court convictions and stated that the proper course for Heck to purse his claims would be in appellate or habeas proceedings. Id. at 484-85. There is no question that a malicious prosecution claim for the successful prosecution of the criminal conviction would per se imply the invalidity of the criminal conviction.

reading of <u>Heck</u> advanced by the Defendants.[9]

**D. Whether Montgomery's State Law Claims Are Barred by the Mississippi Tort Claims Act**

*1. Immunity for Deputies Acting Within the Scope of Their Duties Under the Mississippi Tort Claims Act*

Montgomery has also alleged two state law claims against the Defendants in their individual and official capacities: Intentional and/or Negligent Infliction of Emotional Distress and Civil Assault and Battery. Here again, the Defendants do not question the facial sufficiency of the Amended Complaint and instead rely entirely on immunity under the Mississippi Tort Claims Act ("MCTA"). The Defendants claim that, as officers acting within the scope of their employment in arresting Montgomery, they are immune from suit. Section 11-46-9(1)(c) of the Mississippi Code provides:

(1) A governmental entity and its employees acting within

---

[9] It is true, as the Defendants point out, similar factual situations have arisen in which courts have applied <u>Heck</u>'s holding to bar a plaintiff's claims against an arresting officer. However, the Court's analysis for the purposes of applying <u>Heck</u> turns on the elements of the conviction, not the similarity of facts. For instance, in <u>Hudson v. Hughes</u>, the Fifth Circuit held that the plaintiff's conviction of battery of a police officer necessarily implied the invalidity of his excessive force claim. 98 F.3d 868 (5th Cir. 1996). The court's decision was predicated on the fact that under Louisiana law self-defense is considered a valid defense to a battery charge and therefore imposing liability for any harm that the officer inflicted upon the plaintiff would have implied the invalidity of the plaintiff's battery conviction. <u>Id.</u> at 873. In contrast, under Mississippi law, an individual can be found guilty of resisting arrest by the use of threats or "in any other manner." <u>See</u> Miss. Code Ann. § 97-9-73. It cannot be implied from his conviction that Montgomery initiated any physical contact with the Deputies and therefore there is no indication that any force was necessary.

the course and scope of their employment or duties shall
not be liable for any claim:

. . . .

(c) Arising out of any act or omission of an
employee of a governmental entity engaged in the
performance or execution of duties or activities
relating to police or fire protection unless the
employee acted in reckless disregard of the safety
and well-being of any person not engaged in
criminal activity at the time of injury.

To be immune under the statute, the Deputies must have (1) acted

within the scope of their employment and (2) without reckless

disregard. Further, for Montgomery to recover, he must not have

been engaged in criminal activity at the time of the incident.

Neither Party disagrees that the MCTA is the exclusive remedy for

Montgomery's state law claims against the Deputies acting in their

official capacities. Miss. Code. Ann. § 11-46-5(1). Nor does

Montgomery challenge the Defendants' assertion that they were

acting in their official capacity. The facts as pled, if true,

indicate that the Deputies acted either intentionally or with

reckless disregard. See Amended Complaint ¶¶ 12, 15.[10]

   *2. Whether There Is a Causal Nexus Between Montgomery's
   Convictions and the Deputies' Alleged Actions*

   The more difficult question--and the one that the Parties

_____

[10] As a practical matter, for Montgomery's tort claims to
overcome this statutory immunity provision, he must allege causes
of action which contain an element of intent surpassing ordinary
negligence. His assault and battery claim and intentional
infliction of emotional distress claim obviously clear this hurdle;
however, he may not recover for negligent infliction of emotional
distress.

primarily address--is whether Montgomery was engaged in criminal activity at the time of the incident, which would foreclose his ability to recover under the MCTA. The Mississippi Supreme Court has construed section 11-46-9(1)(c)'s immunity provision to apply only if there is some "causal nexus" between the plaintiff's criminal activity and the defendant's tortious acts. Estate of Williams v. City of Jackson, 844 So. 2d 1161, 1165 (Miss. 2003); Shelton, 2007 WL 1141501, at *7. In other words, if the plaintiff's criminal activity did not cause the alleged tortfeasor's conduct, then section 11-46-9(1)(c) would not shield the tortfeasor from liability. City of Jackson v. Perry, 764 So. 2d 373, 379 (Miss. 2000).

The Defendants' contention that they are immune from Montgomery's state law claims under the MCTA fails for the same reasons their immunity argument failed under Heck. The Defendants have attached Montgomery's justice court convictions as conclusive evidence that Montgomery sustained his injuries during the commission of a criminal act. But there are no facts which create a nexus between Montgomery's injuries and his justice court conviction. Specifically, there is no explanation as to how Montgomery arrived in his girlfriend's apartment, how far the apartment was from the scene of the accident, how much time passed between the accident and the arrest, and under what circumstances the Deputies entered the apartment. The Defendants have failed to

show or otherwise allege that there is a causal nexus between Montgomery's criminal activity and the alleged harm the Deputies caused, therefore, Montgomery's state law tort claims survive the Defendants' Motion to Dismiss.

### III. Disposition

In accordance with the above findings, the Court denies the Defendants' Motion for Dismiss on the basis of qualified immunity and immunity under the MCTA. As articulated above, the Court declines to consider the present Motion as a motion for summary judgment because the Parties have not engaged in discovery and therefore reiterates that the Defendants will have the opportunity to file a summary judgment motion on these same issues at the appropriate time.

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss [**docket entry no. 8**] is **DENIED.**

**IT IS FURTHER ORDERED** that the Plaintiff's Motion to Amend the Complaint is **GRANTED.**

**SO ORDERED AND ADJUDGED,** this the 27th day of December, 2011.


_____/s/ David Bramlette_____

**UNITED STATES DISTRICT JUDGE**


16